## GOTTFRIED v. CRESCENT BREWING CO.

*(Circuit Court, D. Indiana. 1881.)*

1. LETTERS PATENT—PITCHING BARRELS—INVALIDITY FOR WANT OF NOVELTY.

 Letters patent No. 42,580, issued to J. F. T. Holbeck and M. Gottfried, May 3, 1864, for a new and improved mode of pitching barrels, are void for want of novelty.

2. OLD MECHANISM—ANALOGOUS USE.

 There is no patentable invention in using the same mechanism for the purpose of applying a blast of hot air to the interior of beer casks to heat them, as had been previously used to apply a blast of hot air, of the same character, to the interior of moulds and other receptacles for the same purpose.

In Equity.

*Banning & Banning,* for plaintiff.

*Parkinson & Parkinson,* for defendant.

GRESHAM, D. J. Letters patent No. 42,580 were issued to J. F. T. Holbeck and M. Gottfried, May 3, 1864, for a new and improved mode of pitching barrels. This suit was brought by the plaintiff, as assignee and owner of the patent, against the defendant for infringement, and for an injunction and account. The invention consists in preparing casks for receiving pitch or other melted substance, which will render them impervious, by introducing into the casks a blast of highly-heated air. The mechanism described in the patent consists of a furnace with a vertical central opening and grate-bars near the bottom, over an ash-pit. A rotary fan forces the air through a pipe into the ash-pit and up through the fire on the grates, the heated air and products of combustion being thence driven into the cask through a pipe leading from the top or near the top of the furnace or fire-chamber. When the cask is sufficiently heated, it is removed and rolled until the interior surface is thoroughly coated with the melted pitch.

The defendant's device need not be described, as it is not denied that it is substantially the same in construction and mode of operation as the complainant's. The defence is that the patentees were not the original and first inventors of the alleged improvement; that the same had been described in certain English letters patent and foreign printed publications, and had been in public use in this country prior to the supposed invention or discovery.

It was held by Judge Blodgett in *Gottfried* v. *Fortune,* 13 O. G. 1128, that the plaintiff's invention was not anticipated by the Davi-

son & Symington patent for a method of cleansing, purifying, and sweetening casks, vats, and other vessels. And in a number of later cases, decided by Judge Dyer, and reported in 17 O. G. 675, it was held that the plaintiff's invention was anticipated by neither the Davison & Symington patent; the Cochran & Galloway patent for a machine for removing the inconvenience of smoke or gases generated in furnaces or fire-places by the combustion of coal or other inflammable substances, and, in certain cases, for directing the heat and applying such smoke or gases to various useful purposes; the Boville patent, which consisted in part of an improved mode of heating a blast by blowing the same partly through and partly over the fire in a retort or fire-proof chamber, and thence through suitable pipes into a smelting furnace; the Neilson patent for an improved application of air to produce heat in fires in forges and furnaces; nor the Devaux patent for certain improvements in smelting iron, stone, or iron ore by forcing a blast of pure air through a fire in an enclosed apparatus, and thence driving forward the products of combustion through a pipe into a smelting furnace containing the ore. In these cases Judge Dyer also held that the Beck machine, for heating the interior of beer casks and barrels, preparatory to pitching them, was simply an imperfect and abandoned experiment, and could not, therefore, prevail against the plaintiff's invention.

Thus far the record in this case presents questions which were ruled on by the learned judges in Illinois and Wisconsin.

The Seibel machine is constructed of strong sheet iron, about eighteen inches high, five or six inches wide, and three feet long. It rests upon four small feet an inch long. A long iron handle is attached to the top of one end, and a perforated pipe runs through and near the bottom of the machine. The machine containing ignited charcoal is inserted in the cask through the man-hole. The nozzle of a blacksmith's bellows is then inserted into the perforated pipe through an opening in one end of the machine, the bellows is manipulated, and the interior of the cask is heated with the products of combustion or gases until the hard pitch or other suitable substance, previously placed in the cask, is sufficiently melted for practical use. The evidence shows that this machine was constructed and used by Conrad Seibel, at St. Louis, as early as 1856, where it was generally used by brewers in pitching casks; that it was used elsewhere in the United States for the same purpose, and that it is yet so used. The defendant also relies upon an essay entitled the "Newest Discoveries," pub-

lished in Germany, in 1861, in a paper called "Der Bier Brauer," as anticipating the plaintiff's invention. This essay discusses the different methods of heating barrels and casks, and rendering them impervious. After giving his views at some length on the subject of drying casks or vessels by warm or heated air, the writer concludes as follows:

"In case of superfluous water or steam-power, a fan being at command, can be attached and thus blow the air through the vessels. Hereby the fan draws the air out of a channel which connects with the somewhat roomy ash place of a small pit or shaft furnace, which is fed with coke or charcoal whenever warm air is desired. The ash place has an opening from the side provided with a small door to mix the burning air, in case it gets too hot, with cold air."

The defendant introduced a model in connection with this publication which represents a grate in a furnace over an ash-pit. An exhaust passage connects a rotary fan with the ash-pit, and a discharge pipe from the fan is provided with one or more nozzles, which introduce the heated air and gaseous products into as many casks. In the side of the ash-pit is a cold-air inlet, which may be wholly or partially closed by a small door. The fan is adjusted between the furnace and the casks, and thus draws the air by suction from the outside through the fire and the exhaust chamber and forces it forward into the casks. I think from the evidence a skilful mechanic, familiar with the art, and this publication before him, could readily have constructed this model. In this mechanism the fan is between the furnace and the casks, and draws the air through the fire by suction, and then drives the heated blasts or products of combustion forward into the casks, while the plaintiff's mechanism has the furnace between the fan and the casks, and forces the cold air into the fire and the heated blast into the casks; the difference being in mechanical arrangement only, and not in principle or effect.

The Cochrane & Slate patent is also relied upon here, for the first time, as anticipating the plaintiff's invention. This English patent was issued on the third day of January, 1850, and provides for the application of a hot deoxygenated blast for heating and drying moulds for castings, instead of casks. The device consists of an external cylinder of sheet metal, having an interior cylinder fixed within it, the lower part of which is perforated. A fire-place made of fire bricks and supplied with small coke is constructed in a chamber or furnace resting on or over the cylinder when in use. The furnace contains

outlets for the escape of the products of combustion. A mould in a mould-box is inserted within the inner cylinder, and the drying apparatus is placed in position over the cylinders. The blast is then forced from the outside through a pipe into the fire-chamber through or partly through the fire, and the heated blast and gases are thence driven down through and around the mould, which is quickly dried. The hot blast or products of combustion which are here used to disperse moisture and dry moulds, is utilized by the plaintiff in heating the interior surface of beer casks. The subsequent application of pitch or other resinous substances is no part of the plaintiff's invention.

It is not claimed that Holbeck & Gottfried were the first to prepare the interior of barrels and casks for pitching by the application of heat, but it is insisted that their invention was novel in the character of their hot blast, it being deprived of oxygen, the use to which it was applied, and the manner in which the application was made. The first claim reads:

"The application of heated air under blast to the interior of casks by means substantially as described, and for the purposes set forth."

If the patentees deemed it important to use a hot blast from which the oxygen had been consumed, and it was their intention to cover such a blast, that intention was not clearly expressed in drafting the specifications and claims. If they deemed a non-combustible hot blast a part of their invention, why did they not cover it in plain terms in their patent? But construing their patent as providing for such a blast, the evidence shows that its properties had been long known, and that such a blast had been actually used in heating beer casks preparatory to pitching them. The plaintiff's arrangement of a rotary fan, an ash-pit, fire-grates, fire-chamber, and connecting and discharge pipes for forcing air from the outside into actual contact with the fire, and then driving the hot, decomposed blast into casks, was not novel. The German publication described a mechanism substantially like the plaintiff's in construction, mode of operation, and effect. There was no invention in the manner in which the patentees applied the decomposed blast to the interior surface of casks, nor am I able to see that they were entitled to a patent for the use which they made of the hot blast. The patentees took old and well-known mechanical contrivances for accomplishing useful results, and applied them to a new purpose. In this there was nothing to support a claim for a patentable invention or process. The various

instrumentalities which the patentees employed in their use of the hot blast operated just as they had previously operated when the same blast was used for other purposes. They employed old mech-anism without producing a new effect. It may be true that this device produced a better result, but that, of itself, was not enough to sustain the patent.

In delivering the opinion of the court in *Roberts* v. *Ryer*, 91 U. S. 150, Chief Justice Waite says:

"It is no new invention to use an old machine for a new purpose. The inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter whether he had conceived the idea of the use or not."

And, says Justice Story, in *Bean* v. *Smallwood*, 2 Story, 408:

"The thing itself which is patented must be new, and not the mere application of it to a new purpose or object."

The plaintiff's patent was not for the application of an old machine to a new use. The interior of moulds and other receptacles had been previously heated by a hot blast, and the patentees used a blast of the same character to heat the interior of beer casks. No new application of a natural force or element in nature was pointed out or described in the patent.

This case is different in some essential respects from the cases which were decided by Judges Blodgett and Dyer.

The bill is dismissed for want of equity.